IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RHEE BROS., INC., : | |
|    Plaintiff : | |
| : | |
| v. : | Civil No. AMD 01-1894 |
| : | |
| HAN AH REUM CORP., et al., : | |
|    Defendants : | |

...oOo...

MEMORANDUM

This case involves claims for trademark infringement, trademark dilution and unfair competition in the domestic market for Asian food products. Plaintiff, Rhee Bros., Incorporated ("plaintiff" or "Rhee Bros."), has joined five defendants: (1) Han Ah Reum Corporation, trading as Han Ah Reum Asian Supermarket ("Han Ah Reum"); (2) HAR Wheaton, Inc., trading as Han Ah Reum Asian Market ("HAR Wheaton"); (3) Il Yeon Kwon ("Kwon"), who is the owner and operator of Han Ah Reum; (4) Seoul Shik Poom, Inc. ("SSP"); and (5) Joong Kwon, who is the owner of SSP. Plaintiff seeks injunctive relief and damages, including actual and punitive damages, profits, costs and attorney's fees.

Three preliminary motions are now pending: (1) a motion to dismiss for failure to state a claim brought by defendants Han Ah Reum, HAR Wheaton and Kwon; (2) a like motion to dismiss for failure to state a claim brought by SSP; and (3) a motion to dismiss for lack of personal jurisdiction brought by Joong Kwon. I shall first address the motions to dismiss for failure to state a claim and, thereafter, the motion to dismiss for lack of personal jurisdiction. For the reasons set forth, I shall deny the motions to dismiss, and I shall reserve

determination as to the issue of personal jurisdiction over Joong Kwon until the completion of discovery.

I.

All defendants other than Joong Kwon move to dismiss for failure to state a claim plaintiff's claims for trademark dilution. These motions shall be denied.

A.

A complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D § 1349 at 192-93 (1990).

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A claimant is not required to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most

favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman*, 962 F.Supp. 394, 395 (S.D.N.Y.1997)), should they not be accepted as true and the claim dismissed.

B.

Viewing the facts in the light most favorable to plaintiff, and taking its well-pleaded allegations as true, the following constitutes the factual basis for this suit.

Rhee Bros. is a Maryland corporation. It has been in the business of importing, manufacturing, distributing, selling, marketing and otherwise promoting Asian food products in the United States. Over the last 27 years, Rhee Bros. has developed a substantial reputation and name recognition in its market, which consists of Korean and other Asian-American consumers in the United States. A substantial portion of plaintiff's business is conducted in and around Maryland, the District of Columbia, Northern Virginia and New York.

Rhee Bros. was one of the first firms in the United States to import, manufacture and distribute authentic Asian food products in the United States. Since 1978, plaintiff has been selling and distributing a hot bean paste product using the trademark (a series of Korean characters) "Soon Chang Chapssal Gochujang" (hereinafter referred to as "plaintiff's hot bean paste," and the trademark as "Soon Chang trademark"). In 1998, plaintiff registered its Soon Chang trademark with the United States Patent and Trademark Office, Registration No. 2,140,224. Further, since 1988, plaintiff has been selling and distributing a dried seaweed

product using the common law trademark (a series of Korean characters) "DolGak Mi Yuk" (hereinafter referred to as "plaintiff's dried seaweed," and the trademark as "DolGak trademark").

Plaintiff has invested significant money and other resources to develop and promote its Soon Chang trademark and its DolGak trademark (hereinafter jointly referred to as "plaintiff's trademarks") using professional graphics designers and marketing personnel. Plaintiff also has invested significant financial and other resources to develop, market, promote and distribute its hot bean paste and its dried seaweed (hereinafter jointly referred to as "plaintiff's products") using newspapers, salesmen and brochures to advertise its products in Korean-American communities. Plaintiff was the first firm in the United States to introduce these products adopting these trademarks.

As a result of many years of plaintiff's continuing and substantial promotion, marketing, advertisement and investment in its products, retail customers, and general consumers in the Korean-American communities in the United States, particularly Korean-American communities in Maryland, New York and Virginia, have come to recognize plaintiff's trademarks for the high quality and reputation associated with plaintiff's products. Since Rhee Bros. introduced these products, it has enjoyed sales in the millions of dollars. Defendants were well aware of plaintiff's marketing success and its use of the trademarks.

Defendant Han Ah Reum is a Virginia corporation in the retail business of advertising, offering for sale, distributing and selling Asian food products, particularly to Korean-

American communities in Virginia. Kwon, a resident of Virginia, is the owner and operator of Han Ah Reum and exercises primary responsibility for the control, management and operation of the business affairs of Han Ah Reum.

Defendant HAR Wheaton is located in Wheaton, Maryland, and is in the retail business of advertising, offering for sale, distributing and selling Asian food products in Korean-American communities in Maryland.

Defendant SSP is a New York corporation. It operates a wholesale business of advertising, importing, manufacturing, supplying, offering for sale, distributing and selling Asian food products to retail stores in Asian-American communities in the United States, including Maryland. SSP provided the allegedly infringing products to the other defendants.

In late January/early February 2001, one of plaintiff's employees visited the Han Ah Reum store located in Falls Church, Virginia. This employee purchased a jar of hot bean paste product bearing the trademark Soon Chang and a bag of dried seaweed product bearing the trademark DolGak. Subsequently, Jae D. Koh ("Koh"), the Managing Director of Rhee Bros., Koh examined the products purchased from Han Ah Reum and determined that the trademarks on these products were identical or confusingly similar to plaintiff's trademarks.

On or about June 8, 2001, one of plaintiff's employees visited HAR Wheaton, in Wheaton, Maryland and purchased a jar of hot bean paste product bearing the trademark Soon Chang and a bag of dried seaweed product bearing the trademark DolGak. Subsequently, Koh concluded that the trademarks of these products are identical to or

confusingly similar to plaintiff's trademarks.

Plaintiff alleges that defendants began using the Soon Chang and the DolGak trademarks after plaintiff's trademarks had acquired recognition and a reputation in Korean-American communities in the United States. Moreover, plaintiff alleges that defendants' trademark use causes dilution of plaintiff's trademarks by lessening the capacity of plaintiff's trademark to identify and distinguish goods among Asian food retailers and consumers in Korean-American communities.

C.

Movants' assertion, which I reject, that the complaint fails to state cognizable dilution claims, is best understood after a brief summary of the statutory context in which such claims arise. Under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c)(1) ("FTDA"),

> [t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial uses in commerce of a mark or trade name, if such use begins after the mark has become famous and *causes dilution of the distinctive quality of the mark*, and to obtain such other relief as is provided in this subsection. (Emphasis added).

The term "dilution"

> means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—
>   (1) competition between the owner of the famous mark and other parties, or
>   (2) likelihood of confusion, mistake, or deception.

15 U.S.C. § 1127.

Accordingly, as provided in the statute, to establish trademark dilution, a plaintiff must prove that (1) the trademark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and to distinguish goods and services. *See, e.g., Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.*, 170 F.3d 449, 452 (4th Cir.), *cert. denied*, 528 U.S. 923 (1999); *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). Specifically, the Fourth Circuit has elaborated

> that *to establish dilution* of a famous mark under the federal Act requires proof that (1) a defendant has made use of a junior mark sufficiently similar to the famous mark to evoke in a relevant universe of consumers a mental association of the two that (2) has caused (3) *actual economic harm* to the famous mark's economic value by lessening its former selling power as an advertising agent for its goods or services.

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 170 F.3d at 461 (emphasis added). Thus, in the Fourth Circuit, proof of actual economic harm, and not just a likelihood of such harm, is essential to a claim of dilution. *Id.*

Indisputably, the federal statutory definition of dilution, *supra* p. 6, embraces the two traditional formulations of dilution long recognized under state dilution statutes: blurring[1]

---

[1]"Blurring has been variously described by courts as the use or modification of a famous mark 'to identify the defendant's goods and services'", as "a 'whittling away' of the selling power of the mark", and as a use that causes the famous mark to "no longer . . . call immediately to mind" the plaintiff's goods or services." *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.*, 955 F. Supp. 605, 614 (E.D. Va. 1997)(footnotes omitted), *aff'd*
(continued...)

and tarnishment.[2] *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:94 ("The federal statutory definition of what constitutes 'dilution' of a famous mark is a fairly traditional definition which clearly encompasses dilution by 'blurring.'"); *id.* § 24:95 ("The Senate Section-by-Section Analysis stated: 'The definition of [dilution] is designed to encompass *all forms of dilution* recognized by the courts, *including disparagement*.' Almost identical views were expressed on the House side." (citations and footnotes omitted) (alteration in original)). Nevertheless, there is scant authority for the proposition that the expansive definition of "dilution" set forth in the federal statute should be construed narrowly and cabined by the jurisprudence which evolved under the earlier state statutes. Rather, courts have stated otherwise. *See Panavision Int'l, L.P.*, 141 F.3d at 1326 ("To find dilution, a court need not rely on the traditional definitions such as 'blurring' and 'tarnishment.'"); *Intermatic, Inc. v. Toeppen*, 947 F. Supp. 1227, 1238 (N.D. Ill. 1996) (stating that the definition of dilution in the federal statute "is designed to encompass all forms of dilution recognized by the courts, including dilution by blurring, by tarnishment and disparagement, and by diminishment." (internal quotation marks omitted) (quoting H.R. Rep. No. 374, 104th

---

[1](...continued)
*on other grounds*, 170 F.3d 449 (4th Cir.), *cert. denied*, 528 U.S. 923 (1999).

[2]"Tarnishing can occur where an accused, junior mark is used on unwholesome or inferior goods or services that may create a negative association with the goods or services covered by the famous mark." *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.*, 955 F. Supp. 605, 614 (E.D. Va. 1997), *aff'd on other grounds*, 170 F.3d 449 (4th Cir.), *cert. denied*, 528 U.S. 923 (1999).

Cong., 1st Sess. 1995, 1995 WL 709280, pg. 3 (Leg. Hist.)).

Thus, plaintiff contends, in addition to claims for trademark infringement and related claims, that defendants have diluted its Soon Chang and its DolGak trademarks. Defendants argue that the dilution claims should be dismissed because plaintiff has not alleged the requisite elements of traditional blurring or tarnishment claims. Specifically, defendants argue that the complaint does not allege a cognizable claim of dilution by blurring because plaintiff fails to allege that defendants are marketing dissimilar products with similar labels, i.e., non-competing goods; rather, assert defendants, plaintiff explicitly describes SSP's bean paste and dried sea weed as competitive products. Furthermore, defendants rely on plaintiff's failure to allege that defendants' sale of competing bean paste and dried sea weed involves an inferior or offensive product, and that therefore, no legally sufficient claim has been alleged on a dilution by tarnishment theory.

Plaintiff argues that to state a claim for trademark dilution, the holder of the famous trademark need only allege facts supportive of the conclusion that a junior mark is being used, commercially and in commerce, in such a way that it diminishes the ability and effectiveness of the plaintiff's senior mark to identify and to distinguish the plaintiff's goods or services. Plaintiff further contends that it is not the law that dilution by blurring can only take place between noncompeting goods, but that dilution by blurring can take place between competing goods. I agree with plaintiff.

Although a tarnishment theory seems unlikely here, to the extent that defendants are

insisting that plaintiff must make an election as to a specific theory of dilution, I reject such a contention out of hand; there is no warrant for imposing a requirement of that sort. Moreover, as to the theory of blurring, whatever may have been the practice under state statutes, it could not be more clear that the FTDA applies as between competing goods. The very statutory definition of dilution, *supra*, states that dilution can exist "regardless of the presence or absence of . . . competition between the owner of the famous mark and other parties." *See also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000)(stating that "[t]he likelihood of confusion, and whether HERBROZAC competes with PROZAC are irrelevant" (citing 15 U.S.C. § 1127)); *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 48, 52-53 (1st Cir. 1998) ("[The FTDA] applies to products which are competitors . . . as well as to products which are totally dissimilar and are not competitors."). "The federal Act is not limited to the traditional non-competitive setting in which the concept of 'dilution' was first envisioned by its creators." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §24:90.

In sum, plaintiff has adequately plead a claim for trademark dilution and/or dilution by blurring under the Fourth Circuit's formulation of the claim. Plaintiff has "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." 5A FEDERAL PRACTICE AND PROCEDURE § 1357 at 340. Rhee Bros. has alleged facts supporting its allegations that

> it owns and uses Soon Chang and DolGak trademarks, Complaint ¶¶ 12, 13,

> 17, 106, 107, 115, 116, 133, 134, 142, 143; that these marks are famous, Complaint ¶¶ 18, 107, 116, 134, 143; that defendants are using marks identical or confusingly[3] similar to Rhee Bros.' trademarks, Complaint ¶¶ 21, 22, 24, 26, 108, 117, 135, 144; that defendants' use of their marks is junior to Rhee Bros.' use, Complaint ¶¶ 21, 24, 109, 118, 136, 145; that defendants' use of their marks has lessened the ability of Rhee Bros.' trademarks to identify and distinguish Rhee Bros.' goods, Complaint ¶¶ 110, 119, 137, 146; and that Rhee Bros. has suffered actual damages in the form of lost business, lost sales, and lost profit, Complaint ¶¶ 111, 120, 138, 147.

Pl. Opposition at 7. Consequently, defendants' motion to dismiss the dilution claims for failure to a state claim shall be denied.[4]

---

[3]Proof of "likelihood of confusion" or "confusion of source" is not necessary for a dilution claim. 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:90; FTDA 15 U.S.C. § 1127. "However, some early decisions interpreting the federal statute seemed stuck in the likelihood of confusion mode of thinking, utilizing criteria appropriate to a confusion of source theory." 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:90.

[4]Defendants casually raise in a reply brief the issue of whether plaintiff's "specialty products [trademarks] are . . . 'famous' within the meaning of the federal law." Dfs.' Reply at 3. Under the FTDA, 15 U.S.C. § 1125 (c)(1)(A-H), to determine whether a mark is "distinctive and famous, a court may consider factors such as, but not limited to" the following:
> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the mark;
> (D) the geographical extent of the trading area in which the mark is used;
> (E) the channels of trade for the goods or services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Defendants' citation to § 1125 (c)(1)(A-H) is of no moment. As stated, *supra*, plaintiff has alleged sufficient non-conclusory facts to state a claim for trademark dilution and thus the dilution claims survive the motion to dismiss. A complaint should not be dismissed "merely because the court doubts plaintiff will prevail in the action." 5A FEDERAL PRACTICE & PROCEDURE, CIVIL 2D § 1357 at 340-41. Defendants remain free, of course, to raise any and

(continued...)

II.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Joong Kwon moves to dismiss, arguing that he has insufficient contacts with Maryland to support this court's exercise of personal jurisdiction over him.

Joong Kwon is a resident of New York and is the owner and operator of SSP. As noted *supra*, SSP is a New York corporation in the wholesale Asian food products business. It is undisputed that Joong Kwon is indeed President of SSP and, apparently, that he has only been in the State of Maryland once, and that was in his capacity as President of SSP.

"As a general rule the fact that a corporation is doing business in a state is not sufficient to establish *in personam* jurisdiction over the corporation's directors, officers, and agents." *Topik v. Catalyst Research Corp.*, 339 F. Supp. 1102, 1107 (D. Md.)(citing *Wilshire Oil Co. of Texas v. Riffe*, 409 F.2d 1277, 1107 (10th Cir. 1969)), *aff'd*, 473 F.2d 907 (4th Cir. 1972). Moreover, "[c]ontacts as a corporate representative on corporate business do not give rise to personal jurisdiction." *Quinn v. Bowmar Publ'g Co.*, 445 F. Supp. 780, 786 (D. Md. 1978).

Thus, it appears that, under well-settled principles of due process, the only way that there might be personal jurisdiction over Joong Kwon in Maryland (and thus in this court)

---

[4](...continued)
all appropriate grounds and arguments they wish at the summary judgment stage after discovery has concluded.

is to determine that he was culpably involved in the commission of a "trademark tort" in Maryland. The Fourth Circuit has stated:

> [W]hen a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable long-arm statute . . . , he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process.

*Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1064 (4th Cir. 1983), *cert. denied*, 465 U.S. 1007 (1984); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices case." (citations omitted)). The Fourth Circuit further explained:

> If the agent [of the corporation] has never been in the forum state and has had no "casual connection" with the alleged tort and has no reason to foresee being made amenable to suit therein, it would be unfair to require him to come to such a state to defend a tortious act not participated in by him in that state but that same reasoning would not apply to a corporation carrying on an interstate business whose tortious conduct had had a harmful result in the state. However, where the agent has come into the state and has actually committed the tort which forms the gravamen of the cause of action within the state, it is not unfair to require him to defend in the exact forum state where he committed that tort and availed himself of the privileges of the state. In the latter instance, there can be no due process violation in an exercise of jurisdiction over the non-resident agent by the forum state.

*Id.* at 1061 (footnote omitted).

In *Birrane v. The Master Collectors, Inc.*, 738 F. Supp. 167 (D. Md. 1990), the

plaintiff, Birrane, brought contract and tort claims, arising from his termination of employment, against Master Collectors (his employer) and its president Bailey. *Id.* at 168. Birrane worked in its Philadelphia office. *Id.* The court determined that it lacked jurisdiction over Bailey. According to Bailey's affidavit, he was a resident of Georgia; owned no property in Maryland; visited Maryland once as president of Master Collectors "for the purpose of visiting the corporation's Maryland office"; and had no contacts with Birrane in Maryland. *Id.* After discovery, Birrane was unable to establish any further contacts besides that in Bailey's affidavit. *Id.* "Birrane argue[d] that because Bailey is the president and principal shareholder of Master Collectors, the corporation's Maryland contacts should be attributed to Bailey for jurisdictional purposes." *Id.*

The court first noted that the fiduciary shield doctrine did not apply because Bailey had not himself had in-state contacts. *Id.* at 169. The court then explained that there was no jurisdiction because Bailey and Master Collectors cannot be equated with one another. The court elaborated at length:

> An individual and a corporation of which that individual is the principal are separate legal entities. . . . If grounds exist for "piercing the corporate veil" generally, the corporate veil can be pierced for jurisdictional purposes. . . . Absent such grounds, however, there is no basis whatsoever for holding that merely because a corporation transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally. It certainly cannot be presumed that in enacting the long-arm statute, the Maryland General Assembly intended a consequence so at variance with the most basic tenets of corporation law.
> Moreover, if the General Assembly did have such an intent, its action

> would have been unconstitutional. An individual who has chosen simply to transact business in a state through a valid and viable corporation has not necessarily "purposefully avail[ed]" himself of "the privilege of conducting activities within . . . [that] State" in his individual capacity. . . . Nor can it be said that he would "reasonably anticipate being haled into court" in the state in his individual capacity by virtue of the corporation's activities there. . . . No principle is more firmly embedded in corporation law than that a corporation exists separately and independently from its principals, and business people are entitled to rely upon the maintenance of that principle in structuring and managing their affairs.

*Id.* at 169-70 (citations and footnotes omitted) (alterations in original).

*Birrane* may be contrasted with a case relied on by plaintiff, *Schieffelin & Co. v. The Jack Co. of Boca, Inc.*, 725 F. Supp. 1314 (S.D.N.Y. 1989), a trademark infringement case that discussed the exercise of personal jurisdiction over the president of a Florida corporation (Calderaio). First, the court explained that the fiduciary shield doctrine was not applicable in New York when jurisdiction is asserted under New York's long-arm statute. *Id.* at 1318. Calderaio did not have offices or bank accounts in New York. On four occasions between 1988 and 1989, Calderaio traveled to New York to act in his capacity as president of The Jack Company. *Id.* at 1316. While in New York, he attended trade shows to show his products and to execute sales of his products. *Id.* at 1317. The court noted that trademark infringement is a tort and that, in trademark actions in New York, "the tort is said to occur whether the defendant sells or attempts to sell the offending product." *Id.* at 1318 (citations omitted). The court concluded:

> Plaintiff has established that defendant Calderaio, acting on behalf of The Jack Company, made four trips to a location within the Southern District of New

> York to sell [the product]. While in the Southern District, Calderaio sold his corporation's product to a variety of retailers from both the Southern District and outside. These facts are a sufficient basis on which the Court may exercise personal jurisdiction over both Calderaio and The Jack Company. It is unimportant that the manufacture, assembly, and distribution of [the product] took place outside the Southern District.

*Id.*

The court also explained in a footnote: "Because all persons and corporations who participate in, exercise control over, or benefit from a trademark infringement are jointly and severally liable, it is axiomatic that they may not shield themselves from liability through a shell corporation." *Id.* at 1318 n.2. The court determined that The Jack Company was a shell corporation because "Calderaio is president of a corporation with two shareholders (Calderaio and his brother) and three officers (Calderaio, his wife, and his brother). When Calderaio traveled to New York to transact business for The Jack Company, he was working essentially for his own benefit within a corporate shell." *Id.* at 1318.

At this stage, the record is bereft of evidence about SSP, how it operates, Joong Kwon's precise connection to the company, or the location of the "trademark tort." It is unclear as to how the sales of the products were conducted or what Joong Kwon did on the one alleged instance that he was in Maryland. Consequently, plaintiff should be able to conduct limited discovery to ascertain the nature and scope of Joong Kwon's business activities and contacts with Maryland.

III.

For the reasons set forth, I shall deny defendants' motions to dismiss for failure to state claim. The motion to dismiss filed by defendant Joong Kwon shall be denied without prejudice and the parties shall be permitted to conduct discovery regarding personal jurisdiction. Defendant Joong Kwon may renew his motion as a motion for summary judgment.

Filed: December 31, 2001

ANDRE M. DAVIS
UNITED STATES DISTRICT JUDGE